Good morning. May it please the court, my name is Jerome Kuh and I represent appellant William Bixel. Present with me today at council table is Blake Kramer who represents Sister Anne Montgomery. Mr. Kramer is prepared to present the issue of willful, the willful and maliciousness issue that we've raised and will likely take up almost all of our time this morning. And I'm assuming that the, I would like to take just a moment to discuss the international law issue. There's no factual, two factual disputes in this case. The five defendants, now appellants, two of whom are over 80 years old, entered Naval Base Kitsap in Washington State. They passed through three security fences and entered the main limited area, which is the area that we assume, although the government will never, I think, admit it, where nuclear warheads are actually stored on the base. Both issues raised on appeal are trial related issues. The counsel here on appeal. At the outset, I wanted to say that Judge Settle, who was the trial court judge, did a truly commendable job in managing what could have been a very difficult trial situation. I'm sure we've all been witnesses to pro se trials that were very difficult. Judge Settle did a great job. And unless the court has any questions on the international law issue, we believe the issue is adequately presented in the party's briefs. As I'm sure the court can discern, the issues related to international law and the legality of nuclear weapons are most dear to our clients. They are lifelong activists. And they've asked us specifically to respectfully ask the court to consider the issue. With that done, and if there are no questions on that issue, I thank you and would turn the argument over to Mr. Kramer. Thank you. Morning, Honors. In U.S. v. Bass, the Supreme Court wrote legislatures and not courts should define criminal activity. This policy embodies the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should. In this case, five defendants did not believe that they would languish in prison for being malicious. When they were charged with 18 U.S.C. 1363 in conspiracy, they knew that a jury would have to examine their actions and determine whether the government could show beyond a reasonable doubt that these five were willful and malicious. Faced with a statute that was ambiguous and offered opposing meanings by opposing counsel that were in direct conflict, the court chose a jury instruction that deprived the defendants of the opportunity to argue their innocence and left the jury confused. And we believe that this instruction was an error. What definition of malicious do you think we should adopt? We believe that either the jury should have been left with no definition because the statute did not define the ordinary meaning of the word malicious. Well, I mean, that kind of begs the question. What's the ordinary definition of malicious? You believe would control? I mean, does it involve ill will or spite or hatefulness? Certainly. We believe that the defendants should have had an opportunity to present that either they were not malicious or that the word malicious embodied an element of ill will, evil intent. Is that the common law definition of malicious? Your Honor, malicious and willful again and again are referred to as ambiguous. And in different contexts and in different statutes, they're referred to with different meanings. In under 18 U.S.C. 1363, there is no meaning. We believe that the court should have accepted since, for instance, in this court, in interpreting 1361, talked about willful in terms of having a bad intent. We believe that the court should have imparted a sense to the jury that there was a bad intent in 1363. Under the common law, though, isn't malicious more just simply an intent to cause an unprivileged harm? Well, there are certainly different cases that talk about malicious in different contexts. And some cases from different jurisdictions, the Seventh Circuit case cited by the government refers to it in that way. In this case, not only did it not make sense, in our opinion, to present it in that way, but in the related statutes interpreted, that would have given the court justification to say that ill will or bad intent were appropriate here. Well, in this case, though, you're talking about a statute that is directed really at the destruction of government property. I mean, almost by definition, isn't that, you know, an intent that is not... I don't know that people have a hatred for a particular piece of government property. I think it's more an intent to do a kind of a knowing act that is going to damage the property. Well, in interpreting Darrington, which involved the cutting of timber, this court said that in order for that defendant to have been convicted, that the court should... that the jury should have been instructed more than that he was knowing, in that he was... that he was at least knowing, and that possibly bad intent could be ascribed to that as well. And the Darrington court pointed to the Supreme Court case of U.S. v. Bryan, where Bryan specifically talked about how, in cases like that, there could be a bad intent instruction for a jury. And we believe that was the case. You're familiar with the United States v. Doe, right? I am. Which is the arson statute. Absolutely. Why don't we sort of take a look at United States v. Doe and see what they did there. These two statutes have a... their historical lineage is very... is linked together early on. Well, first of all, certainly, Doe is interpreting a... is interpreting mostly willfully, willful and malicious, from a... from a different chapter, not even from the same statute, from a different chapter. Also... Well, what time these two provisions were linked together? Well, there... the Supreme Court talks again and again and again how willful, in different contexts, means different things. And maliciously, similarly, under Lefebvre, the sorts cited by the government, is notoriously ambitious and fraught with ambiguity. But with regards to Doe, this is an unusual case. This is a case cited... this is, of course, one of our cases here from this court, involving a 12-year-old girl who lights a piece of paper and walks away. Ultimately, a fire starts while the girl is still in the very building where this fire has started and she's charged with arson. To me, and I'm sure you won't be surprised when I say this, one of the most interesting aspects of the Doe decision was the dissent written by Judge Fletcher. In the dissent, Judge Fletcher talked about how time and time again, our courts decide that when a fire starts without... without an apparent intention, when somebody lights a grass fire and the grass fire consumes a building, when somebody uses a cigarette to light a towel and the towel starts a door on fire, that these don't add up to arson, that an unintentional act, that when there's an intent to start a fire, but that the fire then results in something else, that there's no intent there. That's sort of the issue in that case. In this case, though, why shouldn't we do what even the dissent did in Doe, and that is assume for purposes of statutory construction that Congress intended to adopt the common law definition? Why wouldn't we do that here? Well, my understanding of Doe is that Fletcher, in his dissent, what he said is that by taking... In her dissent, I think it was... Judge Fletcher? Was it Bid? I think it was Bid. I'm sorry. In dissent, Judge Fletcher wrote that by reducing the element of... By reducing the mens rea from the crime, the case was being turned into... The statute was being turned into a strict liability offense. Similarly, if there is no... And so he said this is an unusual ruling because despite the fact that in many arson cases, we've ascribed that there needs to be... Or we've ruled that there needs to be some mens rea that shows that there was intent to burn. In this case, we're saying that that's not. So he distinguished that ruling from the others, or she distinguished that from the others. Similarly... Well, intent to burn the I don't know how far we would go because it appears from your argument that they could... Your clients could have done even more damage than what they did. For instance, slashed tires or destroyed military vehicles. And as long as their that's completely fine. Well, keeping in mind, our clients were charged with... Each were charged with four different offenses, and they were convicted of others. This particular offense, however, is based on showing beyond a reasonable doubt that they were willful and malicious within the meaning of the statutes. I believe that there's other ways to stop them without charging them with offense that involves a common meaning of believing that their intent was... But even under this statute, if their intent was benevolent, then they could do that. If their intent was benevolent... This reminds me of the Urfa case that was cited by the government, where the issue there, as the court wrote, while they convicted the defendants, the issue was if they did have legal advice leading them to believe that what they did was correct, then their actions were not willful. Similarly, in this case, I agree. If the statute that they're charged under provides language that says that they must be malicious in order to be convicted of this particular crime, then it would be difficult for a trier of fact to find this particular group of defendants to be guilty of this crime. And I think that the solution to this is for the legislature, if they're concerned about this sort of action, for Congress to pass a different law that says something differently. But in this case, they've said that these defendants have to be shown beyond a reasonable doubt to be malicious. And in this case, our defendants were deprived of an opportunity to present this very defense in their closing arguments to the jury because an instruction came in that confused the jury. And in this court, in Darby... I mean, did the district court judge on his own decide to offer a definition of malicious? There was discussion between... No, did he say, oh, look, we have to define this word malicious for the jury because they're never going to understand it? He ultimately, of course... That's not my question. Okay. Who raised the question of how to define the word maliciously in the first instance? The pro se defendants originally asked for an instruction with regards to malicious. And did they offer a proposed instruction? They did. They read to the court at least 11 different definitions, common definitions, all of which involved an evil intent. And ultimately, the court... Stop. Please turn off the cell phone. And ultimately, the court chose to adopt a definition that was very close to what the government offered as their definition. So it's your position that Congress intended only to criminalize destruction of government property that was motivated by ill will or wickedness or along that nature? Both the word willful and malicious, both under Supreme Court rulings and under Ninth Circuit rulings, both can be understood to have an evil intent. And certainly... Which case do you want us to rely on for that proposition? Darrington, Your Honor. Darrington talks about ill will. And by the way, you asked if, again, just to finish my answer to your question about who brought it up. Actually, in some respects it was brought up by the government, who at one point said, Your Honor, we have gotten an idea of what the defendant's strategy is here, and that is to portray themselves as not malicious people. And that was, I believe it was shortly after that, that the defendants then said, we'd like an instruction with regards to malicious. I see. Did you want to save some time for rebuttal on this? I would, Your Honor. I would like to reserve the last five minutes. Thank you. Thank you. Good morning. May it please the Court. My name is Arlen Storm. I'm the government counsel in this case. It's clear that these defendants knew that their conduct was wrongful and without lawful justification, which is the jury instruction that Judge Settle gave in this case. They had been convicted, each one of them, on numerous occasions for very similar conduct. Two of them had received debarment letters from Bangor Naval Base permanently barring them from ever entering the base again. Are they making a sufficiency argument? I thought their argument was principally that the instruction had been wrong or that the hate convention controlled it. Their argument is, they argue that the district court should have given the ill will and evil intent elements to the definition of malicious in addition to arguing that, or in addition to instructing the jury that they needed to find the defendants for wrongful acts. I guess what I'm asking is, why are you talking about whether there is sufficient evidence if the issue is the instructions? Just to set the argument in context, Your Honor, these defendants never had a question about what they were doing and that it was illegal and that they would be arrested for what they were doing. I think that gives background to the entire trial in this case. If you felt so strongly that you could prove it, why didn't you just allow their instruction on malicious to go forward? Because Your Honor, we believe that it is fundamentally wrong in the law and it should not be viewed otherwise. Why wouldn't you just have been satisfied with no definition of malicious? Because Your Honor, the defendants argued extensively through witnesses that they called to the stand that they were not malicious people. They were setting up an argument that also argued that in their closing arguments. They set a very confusing situation up for the jury when it got back to deliberate unless it received an instruction adequately and fully explaining what the law is. In Perkins' Treatise on Criminal Law, he suggests that malicious ought to be defined as an intent to cause the particular harm in the crime in question without justification, excuse or mitigation. And that is very similar to what Judge Settle gave in this case. Did he in this case have language talking about justification, excuse or mitigation? Yes, he did. He said without lawful justification. And that language is taken, by the way, from the Ninth Circuit Pattern Jury Instructions for Arson, which as the Court has pointed out, is a related crime to malicious mischief. In fact, until 1948, they shared... Yeah, they split them off in 1948 when they redid the code. Yes, and so... I thought on appeal, the appellants were challenging the sufficiency of the government's evidence that their conduct was malicious as required by 18 U.S.C. Section 1363. They, in fact, do, Your Honor. They throw out that language, but the heart of their argument is that the judge should have... And you've heard, and it's been briefed, that there was confusion regarding the jury instruction. What's your position on the confusion by the jury? We offered the malicious instruction from the beginning. The judge decided he was not going to provide it. The defense did not want the jury instruction that we offered, which was an adequate and full explanation of the law. The defense then called their witnesses, and one after another were asked by the defendants, am I, the questioner, a malicious person? Is Father Bixle a malicious person? And one by one, their witnesses said, no, not at all. You're not malicious at all. That set a very confusing situation up, and so we brought it back to the judge, and the judge at that point agreed with us that they had raised this issue that needed some guidance in the jury room. And did the jury have a question, or what... They did, Your Honor. Based on the defendant's arguments to them, and based on the defendant's testimony to them, they looked at the law, and they said to the judge, how can this be reconciled? Did the defendants... Why did they put this testimony in front of us when the law is this? You're referring to a question? Yes, Your Honor. And so the judge then told them to go back and deliberate and read the jury instructions again, but without that jury instruction explaining the law, based on the testimony that they put in, the jury could not have resolved that issue, we believe. They needed an accurate statement of the law. I'm sorry, procedurally, that they came with a question asking for a further definition of malicious? I think the question, Your Honor, was did the jury... Why are they... Something about the extent of why are the defendants arguing non-law? That was the gist of their question, is here's the law, that's not what they told us, and with their testimony, that's not what they told us. Well, they could have returned it and not given the verdict if they'd wanted to anyway. Absolutely. Even though they're told to follow the law, I mean, they can do whatever they want. That's absolutely true. When they presented this issue to the district court, they offered one case for their support, to support their argument of evil and ill will as an element of malicious. That case is this court's case, N. Ray Bammer, and it actually holds the exact opposite of the proposition that they were raising it for. In that case, which is a 1997 case, the court noted, malice does not require personal hatred, spite, or ill will, nor does it require intent to injure, but rather requires only an intentional act which causes injury. And that case alone, we would submit, would resolve this case. That was the bankruptcy case? It is the bankruptcy case, Your Honor. It's a bankruptcy fraud case, a clawback provision. So what's the analytical approach you'd like us to take in holding that malicious means ill will? The common law approach, Your Honor. The term as used is a common law term, malicious. And Lefebvre talks about that common law term, and in fact, the defendants cite it at page three of the reply brief. They cite the part that Mr. Kramer has discussed, and that is that there's some ambiguity. But if the court reads that, the ambiguity is in the wanton language, and that is the situation in Doe where a fire is set and then it expands, which is not the case that we have here. But at the end of the paragraph that they cite, the sentence that they stop at is right before this sentence. There was not, in addition, any need to show malevolence or ill will, meaning that motive was irrelevant. That's from their brief. That's the sentence that they did not include in their brief, but it's the next sentence to the paragraph that they did include. That, again, resolves this issue, we believe, under the common law. And which case takes us to the common law, Doe, or? Doe takes us to the common law, Your Honor, as does Urpher. But in Doe, the case decided by this court, the court held, first, that arson and malicious mischief, as Lefebvre tells us, are related. Until 1948, they shared 464 of Chapter 18 of the United States Code, and then they were split apart. But Lefebvre tells us that they're related and share the same intent. Doe then says, looks at the intent of arson, and it says, here's what it means. It means, essentially, what's been paraphrased in the Ninth Circuit jury instructions, wrongful and without lawful excuse. And because they share that intent, we believe that resolves the issue in this case. We also believe that they have waived any willfulness argument. It has not been briefed. We have not had a chance to respond to it in briefing. And unless the court has questions regarding that, I have nothing further. There don't appear to be any further questions. Thank you very much. There's a few minutes for rebuttal. I'd like to talk briefly about this court's decision, the U.S. v. Darby. In that case, this is the case where a mentally ill defendant walked into a bank with a message that said, give me your money. The defendant didn't appear to have, or didn't have any gun, didn't appear to have any intent to rob. What he wanted was more treatment. He was arrested without incident and commanded to stand on the corner, which he did, and then arrested without incident. In that case, the issue was, was his intent to take money? And in considering what instruction was appropriate, this court looked at the fact that when the jury was sent back, they emerged twice with questions, at least one of which was specifically about the mental intent. And deciding that it was appropriate to reverse and deciding that that intent instruction was inappropriate, the court wrote that we must review the instruction in the context of the trial. In the course of the Darby trial, again, there were two questions from the jury. There was an argument that the court thought was misleading with regards to the instruction and closing arguments. And this court specifically referred to those questions from the jury in reaching its conclusion that there was confusion and that it was appropriate to resolve. In our case, one of the questions that came from the jury was actually, the jury wanted to know whether the defendants were aware of that definition that the court had given regarding malicious prior to having committed the crime. That was one of their questions. They were hung up on only one issue, what should we do? We've resolved everything else. Their last question was, they still wanted to know more about what, they wanted a more legal definition of the word malicious. And did the judge answer those questions? In our case, the judge- I thought you were just talking about- I was just talking about Darby. Okay, I'm sorry. In Darby and in our case, in both cases, the judge's decision was to provide no further information with regards to the instruction and what he had and to command- So what was the exact question from the jury in this case? In this case- In our case. I believe the first question was, did the defend- or the first question was, can you give us a more legal definition of the word malice? The next question was, we're hopelessly hung up on one issue, everything else is resolved. The last question was, were the defendants aware of the definition of malicious before they committed this crime? Before they committed this activity? And the judge answered each of those questions? The judge answered the questions by saying, you have enough. I'm not going to add to the definition of malice. Please continue your deliberations. I'm not going to add any more. And did you object to his answer? We submitted that either- that the judge should, again, explain that malice had evil intent. And again, these are the pro se defendants. They argued that there should be evil intent or else the- and then the pro se defendants agreed that, rather than go the other direction, that no further information should be given to the jury. I see. Okay. I'd like to point out that with regards- Well, let me ask. Let me go back to that. So the point of that- of your argument there about the context of the jury confusion, is that what- is that the point of that? The point of that was- That the instruction had to answer that particular question? Actually, my point was that this court, in reviewing the Darby decision, looked specifically at the confusion of the jury in deciding that they should reverse and remand. Well, you know, frequently if- when a jury, you get a question like that and they haven't- the instructions and the judge believes that he's- he or she's properly instructed on the meaning of the law, there's not much for the judge to do except to go back and read the instructions. I have absolutely no- I am in absolute agreement. I think that at that point there's not much left to be done. My only thought is that, in reading the Darby decision, that that was a factor that the court considered in saying, you know what, there was confusion here, there was ambiguity. This could have been defined in a way that did not cause the jury. This could have been defined in a way where the term was defined within the ordinary and common meaning. As understood, instead the jury received in- Assuming that would have been legally proper. Assuming that would have been legally proper, and of course we believe that it would have been. Okay. I'd just like to point out that there's a bit of a time element here. Our clients- the defendants are eager to hear from you. Two of them are about to complete their sentences. Another two, one has very advanced cancer and one has a serious heart condition. So I'd like this court to consider the possibility- We'll take that into account. They're eager to hear from you. Okay. Thank you, counsel. Thank you. We appreciate counsel's arguments, and the matter is submitted at this time.
judges: Gwin, Paez, Murguia